Our third case for argument this morning is Frank v. Walker. Mr. Saito Thank you, Your Honor. Before I begin my presentation, I'd like to note that this morning we discussed whether a remand is appropriate in the other case to discuss how our system is working. The present case here, the Frank case, is here on a preliminary injunction posture. The sort of discovery in order for the state to establish how the system currently works is currently ongoing in the Eastern District and Judge Adelman's courtroom. I don't know if it makes sense to have a duplicative process with having the same discovery, but that is ongoing. Now, the Eastern District, like the Western District, didn't like our free ID system, but it came up with its own solution, a different solution, which has required the state to make an affidavit available to all voters to show up at the polls without photo ID, even those who have not attempted to use our free comprehensive ID system. I want to make two arguments here today. First, the district court's injunction is wildly overbroad, and two, no relief at all should have issued on the record there because there was no showing that the state's procedures were inadequate for any identifiable category of voters. First, the Eastern District's remedy is plainly overbroad. Explaining how the affidavit works makes this plain. What happens if you're a voter and you show up without a photo ID is you get a reasonable effort affidavit, and the affidavit says, do you not have a photo ID without reasonable effort? Now, of course, reasonable effort is a legal standard that lay voters can't be asked fairly to apply unguided. So then there's a list. Why don't you have an ID? Lack of transportation, lack of birth certificate, work schedules, disability or illness, family responsibilities. With all due respect, there is no voter who does not have voter ID that cannot honestly check one of those boxes. Under our system, you get a free ID with one trip to the DMV. Why might someone not take one trip to the DMV? Well, everyone's got some family responsibilities. Everyone's got some work schedules. Some people have illness. There was over half a million IDs issued that way, right? There have been over 550,000 free IDs issued under our system. And another category, birth certificates. We know under the law that you do not need birth certificates. So the affidavit misleads the voter. The voter who doesn't have the birth certificate but hasn't made a single trip to the DMV to get a free ID will think that that's a reason to evade our photo ID process. And this affidavit undermines the core goals of photo ID. Because the affidavit process does not require someone to make that single trip to the DMV so we can conduct a meaningful verification process, it doesn't deter fraud and it doesn't give people confidence that fraud is being deterred. Now, that's, you know, enough to say why the district court's affidavit remedies were brought. But I also think that it's important to realize that on the record that the plaintiff showed, there was no gap at all in our photo ID law so that no remedy should have issued. There are three categories of alleged shortfalls that I'd like to discuss today because those track the three categories that this court flagged in its Frank II opinion. First, those without birth certificates. For example, a birth certificate was destroyed in a fire. That was an example that was used in Frank. There is simply no requirement that a voter produce a birth certificate. Home Bible, early school records, and any other proof the administrator deems sufficient is enough. But more than that, DMV will look, they will try to put the pieces of the puzzle together even if none of those things exist with the goal of getting every voter a hard ID card. And while that hard process is ongoing and they go to extreme lengths to try to verify the claims of the applicant, the person has a photo ID receipt credential that is good for voting. The second, name mismatches. The rules in Wisconsin are clear. If you have a significant name mismatch between your underlying document and what you're saying your name is, fill out a single form, you'll get a hard card. In that name, you don't even need to enter the IDPP process. You don't even need to get a receipt. Finally, Social Security cards. Under Wisconsin's law, you don't even need a proof of Social Security number or even a Social Security number to get a photo ID. This is one way our system is even more voter friendly than the Virginia system that the Fourth Circuit just upheld in a unanimous decision. As for proof of identity, which plaintiffs claim you need a Social Security card for, that is simply not true. Our longstanding regulations say that proof of identity can be established by any authentic document identifying the person by name, bearing the person's signature, or reproduction of the person's signature. There is no record evidence of a single voter that does not have a document like that. If there's no further questions, thank you, Your Honors. Thank you, Counsel. Mr. Young. Thank you, Your Honor. May it please the Court. My name is Sean Young, and I'm counsel for plaintiffs in this case. We're here today because the DMV has failed as the gatekeeper of our democracy after five long years and countless unsuccessful attempts. But even if defendants are able to prove that 99% of voters can get ID easily, that does not fix the problem, the remaining voters are entitled to relief. And the District Court's preliminary remedy reasonably ensures that the personal right to vote of these vulnerable voters is no longer at the mercy of the DMV. At the end of the day, this case, like many other preliminary injunction cases, is about whether the District Court abused its discretion at the time that it entered its decision, last July, and there was no abuse here. Counsel, is there any particular advantage you can think of in having the same issue being litigated simultaneously in the Western District of Wisconsin and the Eastern District of Wisconsin? I'd just point out two things. This case, our case, is now five years old. No, I know. But, of course, you don't want to take on all the other issues that have been raised in Western Wisconsin. Our case is limited to challenging voter ID. Right. And here the District Court has considerable experience with this issue, as does this Court. Yes. And it's particularly because of that District Court's expertise that it's uniquely qualified to craft a preliminary remedy in this case. The District Court here balanced the competing risks and equities, adopted the only remedy that was presented to it by the plaintiffs, because the defendants didn't propose one themselves, adopted the exact same affidavit remedy that North Carolina and South Carolina and now Texas have adopted in response to voter ID litigation, and all four classes of voters that this Court has expressly held is entitled to relief. And if that's an abuse of discretion, it's very hard to imagine what isn't, because adopting defendants' extreme position would open the floodgates to endless micromanagement by this Court of countless preliminary injunction decisions. The District Court's injunction should be affirmed. Now, as a preliminary matter, I want to touch on the District Court's finding of fact that some voters are unable to obtain ID with reasonable effort, which was not clearly erroneous. The defendants say that people can get ID through one trip to the DMV, which is flat-out false. The DMV denies ID to voters who don't have proof of identity. That's not in dispute. Defendants concede that. Defendants' main argument is that now any document, literally any document with a name and signature on it, qualifies as proof of identity. That argument's been waived. They have never made that argument in the last five years of this litigation. They did not raise that argument in the Court below. And it's for good reason, because it's just not true. The DMV has never been that expansive. The only change is this website change in August after the District Court's decision, which the party agreed is not relevant for this Court to consider and certainly doesn't establish voluntary cessation. As far as people with name spellings in their birth documents, the DMV does deny ID to those people. It does not cover, and this is a point that's being lost in their briefs, it does not cover people who have name spellings in their Social Security records. Those people are forced to amend their birth certificate or amend their Social Security records, which is patently unreasonable. And as the DMV administrator all but conceded, the provision in the emergency rule about name spellings does not apply to people, well, does not apply to people who have name spellings in their birth documents, because they have never used that name at any point in their lives. And that concession can be found, I believe, on, I apologize, I don't have it here with me. But the bottom line is that plaintiffs like Ruthelle Frank, whose name is misspelled in her birth certificate, cannot truthfully sign this name change affidavit, which defendants allege is the panacea for all ills. For voters without birth documents who get temporary IDs now at the start of the IDPP, those IDs will expire if the voters' birth documents cannot be found through no fault of the voter. Now defendants say all these people have to do is stay in contact with the DMV. That's not what the record actually reflects. If you look at Appendix 127, it says, and this is straight from the DMV administrator's declaration, voters must provide new information that can advance the investigation if they want to keep their temporary IDs. They do not just pick up the phone and say, hey, I'm alive, please renew my ID. And there are record evidence of people who were denied ID because their birth records can't be found. And, of course, the rules don't do anything for voters who can't reasonably get to the DMV or get to the DMV during limited business hours. The bottom line is that the district court did not clearly err in finding that voters can't get ID with reasonable effort. Judge Sykes asked a question about the May 2016 rule and isn't the evidence before May 2016. I'd point this court to Docket Entry 287, Paragraph 39 of Boardman's Declaration, which expressly says that the May 2016 rule is a mere codification of existing practices. So that is why the district court found that this is a continuation of what already was in place. That was not clearly erroneous. The text of the rule itself also does not change many of the anecdotes that we describe of people not getting ID. The actual text of the rule does not change the circumstances of those voters. If someone's denied ID because they don't have proof of identity, the emergency rule doesn't change that. If someone is denied ID because there's misspelling, the text of the rule doesn't change that. For people who don't have birth documentation, the text of the rule does now provide a temporary ID at the start of the process, but the text of the rule also says that those IDs will be expired if they can't find that birth documentation. Now, the heart of this appeal is whether the district court's remedy was an abuse of discretion. And today, defendants have made some arguments about the various risks and equities in the type of affidavit that the district court crafted. And it's essentially asking this court to redo the district court's remedy from scratch, and that's not this court's role. The district court has already weighed those competing risks, and the balancing of those risks against the real risk of disenfranchisement was not an abuse of discretion. Defendants don't dispute that the strong safety net crafted by the district court prevents irreparable harm for the very class of voters that Frank Tu said was entitled to relief. The district court recently found that that real harm outweighs the minimal risk that voters outside the class will improperly sign the affidavit. And that's because voters who can easily get ID are not going to expose themselves to criminal liability by signing the affidavit when they can easily get ID. How does it expose them to criminal liability when the district judge said that nothing in that affidavit can be questioned by anyone? The reasonableness of the reason offered cannot be questioned, but the falsity can. I don't think that's what the district judge said. The district judge said that nothing can be questioned. So if somebody checks the other box and says, I'd rather go to a Packers game, that person is entitled to vote and that statement can't be questioned. The reasonableness of the statement. And that's all there is to it. The reasonableness of the statement cannot be questioned, but the falsity can. And the bottom line is the district court found that those are the- How can other be false? In what sense? Well, if- Wouldn't any sane person rather go to a Packers game than stand in line at the DMV? Well, the district court found that the risk of this happening is very low. And about the criminal, if I write that I can't get ID because I don't have a birth certificate, but I do have a birth certificate, then that's false. The district court, there's a minimal risk of that happening. And I would also add that the example of- It wasn't an abusive discretion for the district court not to reinvent the wheel. Two and now three other strict voter ID states have affidavits that contain this exact provision. And the district court expressly said, this strongly suggests that the state's interests are not substantially harmed by having this in. It was not an abusive discretion for the district court to do what other states have done rather than start from scratch. And as this court explained previously, this entire balancing process isn't something that's susceptible to mathematical quantification or formalization, which is why it's reviewed for abuse of discretion. And it wasn't abuse here. And in terms of the hypothetical gray area cases that I think this court alluded to for people who may or may not fall into the class, the mere existence of hypothetical gray area cases doesn't make the remedy invalid. In Brown v. Plata, you had a class of people with, quote, serious, I believe it's serious medical needs. And of course, we can debate forever about what's a serious medical need in a particular case, but that doesn't make the remedy invalid. And again, there's especially no abuse of discretion here when the plaintiffs were the only party that proposed a remedy, defendants didn't propose any, and this is the exact same thing other states have done. And in fact, the affidavit's actually narrower than the affidavits that's used in a lot of other voter ID states, which merely requires that you demonstrate that, swear that you are who you say they are, who you say they are. A quick note about the Western District's remedy. The IDPP remedy that was entered by the Western District doesn't undermine the need for relief in this case. In addition to all the problems with it that the one Wisconsin plaintiffs discussed, it focuses solely on voters who enter the IDPP. The affidavit catches the voters who don't, and as well as the inevitable mistakes that always happen whenever the DMV changes its rules, which it's been doing now for five years. We need a strong safety net. We cannot keep playing this cat and mouse game that this court is being dragged into, that the DMV is actually being dragged into. We need a strong safety net at the polls to make sure that vulnerable voters are no longer the victims of this never-ending process. The district court did hear exactly what a district court is supposed to do. When faced with an impending emergency, it assessed the limited factual record, balanced the equities and risks, ordered reasonable preliminary relief based on the only remedy that was proffered by the parties. This process is not susceptible to mathematical quantification or formalization, which is why it's reviewed for abuse of discretion. And deviating from that standard here will really open the floodgates to endless micromanagement. If this court has no further questions, this district court's injunction should be affirmed, and I yield the remainder of my time. Thank you, Mr. Young. Anything further? Unless the court has any further questions, I don't have anything further. I think not. Thanks to both counsel, the case is taken under advisement.